UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Carmen Wyns-Bills, ) | C/A No. 5:14-3353-DCN-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Report and Recommendation |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff, appearing through counsel, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action as detailed herein.

I.     Relevant Background

   A.     Procedural History

On August 22, 2011,[1] Plaintiff filed an application for DIB alleging a disability onset date of January 5, 2011. Tr. 127-28. Her application was denied initially on December 19, 2011, Tr. 47, and upon reconsideration on March 28, 2012, Tr. 61. Plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 74-75. On February 20, 2013, Plaintiff appeared with her attorney before ALJ Edward T. Morriss in Charleston, South Carolina. Tr. 25-36. The ALJ denied Plaintiff's application in a written decision dated April 22, 2013. Tr. 10-20. Plaintiff then

---

[1] Although the Application refers to August 23, 2011, Tr. 127, the Disability Report refers to a protective filing date of August 22, 2011, Tr. 145.

requested review by the Appeals Council. Tr. 7. The Appeals Council denied Plaintiff's request for review in a notice dated July 8, 2014. Tr. 1-5. The Appeals Council's denial rendered the ALJ's decision the final administrative action of the Commissioner for purposes of judicial review. Tr. 1. On August 20, 2014, Plaintiff filed her Complaint in this court seeking judicial review of the Commissioner's administrative determination. ECF No. 1.

  B.  Plaintiff's Background

Born on August 27, 1968, Plaintiff was 42 years old at of her alleged onset date of January 5, 2011, and 44 years old at the time of the administrative hearing. Tr. 28. Plaintiff completed high school and some college. *Id.* Plaintiff completed specialized training in real estate in 2000, and worked as a realtor from 2000 to 2011. Tr. 166. In her Disability Report Plaintiff indicated that she stopped working on January 15, 2011 because of her medical conditions of interstitial cystitis, vulvodynia, fibromyalgia, irritable bowel syndrome, ulcerative colitis, tachycardia, and nerve damage in her lower back. Tr. 165.

  C.  The Administrative Hearing

Plaintiff appeared with her attorney at her administrative hearing on February 20, 2013. Tr. 25. On the date of the hearing Plaintiff testified that she was 44 years old and had completed twelfth grade and some college. Tr. 28. Plaintiff testified that she had not worked since January 2011. Tr. 29. Plaintiff testified that in 1999 she was attacked and beaten by a stranger in a parking lot resulting in permanent nerve damage in her lower back. Tr. 29-30. Plaintiff stated that this incident "seemed to be kind of what has set this off with the different diseases [she's] been diagnosed with." Tr. 30. Plaintiff stated that she returned to work after her injuries but over the years her symptoms worsened and her health slowly deteriorated. *Id.* Plaintiff testified that in 2011 she "was having constant diarrhea, stomach pains, fatigue, having to urinate about every 10 to 15

2

minutes." *Id.* Plaintiff testified that in 2000 she contracted the Epstein-Barr virus, which she guessed compromised her immune system. *Id.* Plaintiff testified she has been diagnosed with fibromyalgia,[2] vulvodynia,[3] ulcerative colitis,[4] and interstitial cystitis.[5] Tr. 31. She stated she also has extreme migraine headaches "15 out of 30 days" that "last for days on end and Motrin doesn't help." *Id.* Plaintiff testified that various treatments she has tried, including DMSO treatments[6] and Depo shots, have not helped her problems and she has "been on Elmiron[7] for a couple of years." Tr. 31-32. Plaintiff stated that because she no longer has insurance she cannot afford to go to the doctor, and "the Elmiron alone is $600 a month." Tr. 32. Plaintiff testified that she has to "be within reach of a bathroom almost at all times because [she does not] know when the

---

[2] Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory, and mood issues. Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals. Symptoms sometimes begin after a physical trauma, surgery, infection or significant psychological stress. In other cases, symptoms gradually accumulate over time with no single triggering event. *See* http://www.mayoclinic.org/diseases-conditions/fibromyalgia/basics/definition/CON-20019243 (last visited Aug. 18, 2015).

[3] Vulvodynia, in the simplest of terms, means "pain of the vulva." It is defined by the International Society for the Study of Vulvovaginal Disease as chronic vulvar discomfort or pain, characterized by burning, stinging, irritation or rawness of the female genitalia. The cause of vulvodynia remains unknown. *See* http://womenshealth.about.com/cs/vulvodynia/a/vulvodyniaqapt1.htm (last visited Aug. 18, 2015).

[4] Ulcerative colitis is an inflammatory bowel disease that causes long-lasting inflammation and ulcers (sores) in the digestive tract. Ulcerative colitis affects the innermost lining of the large intestine (colon) and rectum. *See* http://www.mayoclinic.org/diseases-conditions/ulcerative-colitis/basics/definition/con-20043763 (last visited Aug. 18, 2015).

[5] Interstitial cystitis is a term that has been used to refer to a clinical syndrome characterized by chronic urinary urgency (feeling the need to urinate immediately) and frequency (frequent urination), usually with suprapubic discomfort or pressure and usually relieved by urinating. *See* http://www.medicinenet.com/interstitial_cystitis/page2.htm (last visited Aug. 18, 2015).

[6] DMSO is a simple chemical made from wood pulp that penetrates the skin and has demonstrated the ability to promote the healing of pockets of inflammation. DMSO is an acronym for dimethylsulfoxide and can cause a minor and temporary irritation of the skin. . . . [T]he FDA has restricted DMSO's application to the treatment of interstitial cystitis (bladder wall inflammation)". *See* www.dmso-use.com/What_is_DMSO.htm (last visited Aug. 18, 2015).

[7] Elmiron is the only FDA-approved medication for the relief of bladder pain or discomfort associated with IC [interstitial cystitis]. Elmiron is an oral medication that is believed to help build up the protective mucous lining of the bladder wall. *See* http://www.womenshealthwv.com/elmiron-for-interstitial-cystitis-ic/ (last visited Aug. 18, 2015).

symptoms are going to kick in." Tr. 32.

Plaintiff testified that on most days her mother comes over and takes Plaintiff's son to school. Tr. 32. Plaintiff stated that on bad days she sleeps until her son gets out of school and then gets up to help him with homework and feed him dinner. *Id.* Plaintiff stated when her son goes to bed that she goes "back to bed." Tr. 32-33. Plaintiff stated that she "would get fired in a heartbeat at a regular job because [she is] so drained on most days." Tr. 33. Plaintiff testified that she probably has "energy about two days a month" and she tries to conserve her energy so that she can spend time with her eight-year-old son when he returns home after school. *Id.* Plaintiff stated that her mother and her 19-year-old daughter help with grocery shopping and cooking. *Id.* Plaintiff stated that she cannot stand up for long periods of time due to fatigue and because past surgery on her left leg for superficial phlebitis has affected the circulation in her leg. Tr. 33-34.

In response to questions from the ALJ Plaintiff stated that the last doctor she saw was Dr. Holtzclaw who treated her for ulcerative colitis, and her last visit was two months prior. Tr. 34. Plaintiff stated that Dr. Holtzclaw wrote a prescription that cost almost $650, so she could not take it. *Id.* Plaintiff testified that Dr. Swift was treating her for the interstitial cystitis and doing the DMSO treatments. *Id.* Plaintiff stated that after her insurance "ran out" she was no longer able to see him. *Id.* Plaintiff stated the DMSO treatments "eased the symptoms a little." *Id.* Plaintiff stated she has not had the Elmiron for about four weeks. *Id.* Plaintiff testified that she is having pain at the same level or worse than she had in 2011. Tr. 35. She stated she has this pain at least once every two days and the pain lasts all day. *Id.* Plaintiff stated that her present pain level was at "about an eight" and she had "been taking Macrobid[8] for the last four days" as suggested by Dr. Holtzclaw. *Id.*

---

[8] Macrobid (nitrofurantoin) is an antibiotic that fights bacteria in the body. Macrobid is used to treat urinary tract infections. *See* http://www.drugs.com/macrobid.html (last visited Aug. 18, 2015).

4

II.   Discussion

    A.   The ALJ's Findings

In his April 22, 2013 decision, the ALJ made the following findings of fact and conclusions of law:

    1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

    2. The claimant has not engaged in substantial gainful activity since January 5, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

    3. The claimant has the following severe impairments: cystitis and inflammatory bowel disease (20 CFR 404.1520(c)).

    4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

    5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to only occasional stooping or crouching secondary to gastrointestinal and gastrourological complaints.

    6. The claimant is capable of performing past relevant work as a realtor. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

    7. The claimant has not been under a disability, as defined in the Social Security Act, from January 5, 2011, through the date of this decision (20 CFR 404.1520(f)).

Tr. 15-19.

    B.   Legal Framework

        1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

    inability to engage in any substantial gainful activity by reason of any medically

5

> determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step). A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpt. P,

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") which the Social Security Administration ("the Agency") considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at step three).

§ 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *see also Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973).

C. Analysis

Plaintiff argues that (1) her case should be remanded so that the ALJ can consider additional evidence submitted to the Appeals Council, (2) the ALJ's credibility analysis does not rest on substantial evidence, (3) the ALJ improperly evaluated Dr. Holtzclaw's opinion, and (4) the ALJ's Step Four conclusion is not supported by substantial evidence. Pl.'s Br. 1, ECF No. 15. The Commissioner asserts that substantial evidence supports the ALJ's finding that Plaintiff is not disabled under the Act. Def.'s Br. 6-7, ECF No. 17.

1. Evidence Submitted to the Appeals Council

Plaintiff argues that pharmacy records submitted to the Appeals Council contradict the ALJ's assertion that Plaintiff stopped taking all medication for a year. Plaintiff asserts that "[r]emand is entirely appropriate for the ALJ to consider this new evidence, as it is abundantly clear that his observation does not rest on substantial evidence." Pl.'s Br. 8. The Commissioner "contends that evidence submitted to the Appeals Council does not present 'material' findings that would have changed the ALJ's decision, and therefore, there is no basis for remand." Def.'s Br. 7. The Commissioner asserts that because the pharmacy records do not include any additional

8

information that would support a finding of increased functional limitations, they would not have changed the ALJ's decision regarding Plaintiff's functional limitations. *Id.* at 8. In response to this argument Plaintiff asserts that these "records were specifically submitted to fill an evidentiary gap exploited by the ALJ in his decision" and therefore the court cannot say the records would not have changed the ALJ's decision regarding Plaintiff's functional limitations. Pl.'s Reply Br. 2, ECF No. 18.

In *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), the Fourth Circuit addressed the difficulty that arises on review by the courts when the Appeals Council makes additional evidence part of the record for purposes of substantial evidence review, but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. Under the facts presented in *Meyer*, the court determined that the new evidence added to the record by the Appeals Council was not "onesided" and that, upon consideration of the record as a whole, the court could not determine whether substantial evidence supported the ALJ's denial of benefits. *Id.* at 707. In *Meyer*, the court noted the ALJ's emphasis that the record lacked certain information and suggestion that such an "evidentiary gap played a role in" his decision; the plaintiff subsequently obtained this evidence and presented it to the Appeals Council. *Id.* The Fourth Circuit concluded that "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." *Id.* Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," the case had to be remanded to the ALJ for further fact finding. *Id.*

Here, in finding that Plaintiff was not disabled the ALJ noted the following: "[T]he record does not contain any evidence that the claimant discussed functional limitations so disabling as to preclude all types of work activity with any of her treating physicians and, in fact, she reported that

9

she stopped taking *all* medications for nearly a year, which would suggest that her symptoms were much less severe than alleged." Tr. 19 (emphasis added). As noted by Plaintiff, this statement by the ALJ is contradicted by the actual treatment note that indicates Plaintiff had stopped taking only the medication prescribed for ulcerative colitis but had continued taking other prescribed medications including Elmiron, Ativan, Toprol SL, Effexor, ProAir, and Advair. Pl.'s Br. 8 (citing Dr. Holtzclaw's Progress Note dated October 23, 2012 at Tr. 451). Plaintiff submitted her pharmacy records to the Appeals Council to provide evidence of the medications she took on a regular basis and to corroborate her testimony regarding the cost of the Elmiron prescription. *Id.* The undersigned finds that the pharmacy records fill an "evidentiary gap" in the record. As was the case in *Meyer*, in the absence of consideration of evidence that demonstrates Plaintiff did not stop taking all medication for a year, the undersigned cannot determine "whether substantial evidence supports the ALJ's denial of benefits." 662 F.3d at 706.

2. Plaintiff's Credibility

Plaintiff disputes the ALJ's credibility finding arguing the ALJ did not "identify which complaints he rejected and which he accepted." Pl's Br. 9. The Commissioner argues "the ALJ properly found that the objective medical evidence does not support Plaintiff's complaints of disabling symptoms." Def.'s Br. 9.

SSR 96-7p requires that, prior to considering Plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain. *See* SSR 96-7p; *see also* 20

10

C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996). The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of her testimony and the record as a whole. If he rejects a claimant's testimony about a claimant's pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see Mickles v. Shalala*, 29 F.3d 918, 927 (4th Cir. 1994) ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . .").

Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," finding specifically that Plaintiff's "testimony was not consistent with the overall medical evidence of record." Tr. 17. The ALJ noted Plaintiff's hearing testimony that "she stopped working because of chronic diarrhea, urinary urgency and frequency, stomach pain, and fatigue" and could not leave her house because she needed to be near a bathroom. *Id.* He noted her testimony that "stress

11

increased the severity of some of her symptoms" and that she was diagnosed with fibromyalgia, migraine headaches, and ulcerative colitis. *Id.* Concerning Plaintiff's inflammatory bowel disease the ALJ noted that "the medical evidence of record reveals a history of complaints of abdominal pain, frequent urination of an unknown etiology, and recurrent changes in bowel habits." Tr. 18. The ALJ noted an examination made by Dr. Jeffrey Joyner in April 2010 that concluded Plaintiff's symptoms were "consistent with the diagnostic criteria for irritable bowel syndrome." *Id.* The ALJ also referred to a July 2011 colonoscopy that produced "abnormal findings of some scattered erosions of the sigmoid and rectal areas." *Id.* The ALJ noted Dr. Priscilla Holtzclaw's October 2012 diagnosis of "unspecified ulcerative colitis, tachycardia, and anxiety" and her February 2013 medical source statement finding Plaintiff "was able to sit and walk for one hour, but could not stand at all secondary to conditions including frequent urination, ulcerative colitis, back pain, and fibromyalgia." *Id.* The ALJ also referenced Dr. Holtzclaw's statement that Plaintiff's "objective signs of pain were frequent urination and diarrhea, migraines, fatigue, and bloating that would cause her difficulty dealing with a low level[] of stress and would exacerbate her conditions such as fibromyalgia" and her statement that Plaintiff's side effects from medications included drowsiness, irritability, nausea, and impaired concentration. *Id.* (citing to ex. 16F). The ALJ cited to assessments made by Dr. Steven Swift in March 2010 of "a flare of interstitial cystitis" and in September 2011 of "increased pain over the bladder," and a January 2012 annotation that Plaintiff "was having flares of her symptoms following ingesting various foods, as well as urinary frequency and urgency." *Id.* (citing exs. 6F/16 and 4F/5-7). The ALJ also noted a November 2011 consultative examination by Dr. Daniel Bates in which Dr. Bates diagnosed Plaintiff with "anxiety, unspecified tachycardia, insomnia, chronic interstitial cystitis, and ulcerative colitis." Tr. 19 (citing Ex. 10F). The ALJ determined:

12

> There are no medical findings of sufficient severity to suggest that the claimant is completely incapable of all work activity. There are positive findings that somewhat support some of the claimant's subjective symptoms and reported limitations. While the medical evidence of record establishes the existence of the above-mentioned impairments of inflammatory bowel disease and cystitis, the objective findings do not confirm that these impairments are of such a severity that they could reasonably be expected to produce the degree of pain and functional limitation alleged.

Tr. 19.

The ALJ does not explain how Plaintiff's testimony is inconsistent with the overall medical evidence of record. It appears to the undersigned that Plaintiff's testimony, as cited to by the ALJ, is entirely consistent with the medical evidence. The ALJ concludes that Plaintiff was "fairly symptomatic from September 2011 through January 2012, but even though she had stopped taking her prescribed medications for almost one year, the clinical objective findings were fairly benign in October 2012 and the office treatment notes indicated that the claimant continued to work." Tr. 19. As discussed in the preceding section, Plaintiff has provided evidence that she did not stop taking all medications for a year. Furthermore, the undersigned notes that the October 2012 treatment note to which the ALJ refers contains the identical "Social History" as in a treatment note dated July 20, 2011 indicating Plaintiff "works as a real estate agent." *Compare* Ex. 5F, Tr. 259 *with* Ex. 15F, Tr. 452. This suggests the notation is a carryover from a prior report of Plaintiff's social history and not a report of her current employment status. Furthermore, other than noting that it appeared Plaintiff continued to work, the ALJ did not consider Plaintiff's prior work record. *See Spissinger v. Colvin*, No. 5:12-CV-03454-DCN, 2014 WL 4955257, at *3 (D.S.C. Sept. 29, 2014) (remanding case because ALJ failed to mention the claimant's prior work record as required by SSR 96-7p and 20 C.F.R. § 404.1529). The undersigned finds that the ALJ's reasons for his findings on Plaintiff's credibility are not sufficiently specific and are not supported by substantial evidence. "Because the ALJ's credibility assessment is flawed, it cannot be upheld."

13

*Fleming v. Astrue*, No. 5:11-304-DCN, 2012 WL 3686622, at *17 (D.S.C. July 10, 2012) *adopted as modified,* No. 5:11-CV-00304-DCN, 2012 WL 3679628 (D.S.C. Aug. 24, 2012).

       3.   Treating Physician Opinion

Plaintiff asserts the ALJ improperly evaluated Dr. Holtzclaw's opinion. Pl.'s Br. 10-13. The Commissioner argues that "substantial evidence supports the ALJ's finding that Dr. Holtzclaw's opinion of Plaintiff's limitations is entitled to little weight." Def.'s Br. 11.

On October 23, 2012, Dr. Holtzclaw saw Plaintiff for a routine checkup. Tr. 451. She noted that Plaintiff had stopped taking her ulcerative colitis medications for about a year but that her symptoms were beginning to return for which Dr. Holtzclaw prescribed Canasa suppository 1000 mg. Tr. 451-52. In the Review of Systems gastrointestinal section Dr. Holtzclaw noted that Plaintiff admitted having abdominal pain and diarrhea but denied constipation and nausea. Tr. 452. Plaintiff denied having any other general/constitutional, ENT, respiratory, cardiovascular, or psychiatric problems. *Id.* In addition to the suppositories for Plaintiff's ulcerative colitis, Dr. Holtzclaw refilled Plaintiff's prescriptions for Toprol XL for tachycardia, and Ativan for anxiety. *Id.*

On February 26, 2013, Dr. Holtzclaw completed a "Medical Source Statement Regarding the Nature and Severity of an Individual's Physical Impairment" offering her opinion on Plaintiff's "ability to do *work-related activities on a day-to-day basis in a regular work setting*." Tr. 454 (italics in original). Dr. Holtzclaw noted Plaintiff could sit for one hour, stand for zero hours, and walk one hour, and these limitations were due to "frequent urination, vulvodynia, UC [ulcerative colitis], back pain, . . . phlebitis, varicose veins, [and] fibromyalgia." *Id.* Dr. Holtzclaw noted Plaintiff could frequently lift up to ten pounds, occasionally lift 11-20 pounds, and never lift over 21 pounds. Tr. 455. She noted Plaintiff could carry up to 20 pounds occasionally, but never carry

over 21 pounds. *Id.* Dr. Holtzclaw opined that Plaintiff could sit for 30 minutes before needing to change positions and stand for ten minutes before needing to change positions. *Id.* She noted Plaintiff could use both hands for simple grasping, but not for pushing/pulling or fine manipulation due to arthritis and previous injuries in both hands, fibromyalgia in shoulders, and arthritis. Tr. 456. Dr. Holtzclaw anticipated Plaintiff's impairments could cause her to be absent from work four or more times per month. *Id.* She noted Plaintiff could frequently bend and reach above; occasionally squat, stoop, crouch, and kneel; and could not crawl or climb. Tr. 456-57. Dr. Holtzclaw noted that Plaintiff's objective signs of pain included "frequent urination [and] diarrhea, migraines, fatigue, [and] bloating" and that low levels of stress exacerbated Plaintiff's fibromyalgia and ulcerative colitis. Tr. 457. Her final notation indicated the side effects from Plaintiff's prescription medication included drowsiness, nausea, impaired concentration, and irritability. *Id.*

> The ALJ found as follows:
>
> As for the opinion evidence, I give little weight to the February 2013 opinion of Dr. Patricia[9] Holtzclaw found in Exhibit 16F. This opinion is not consistent with her own latest treatment notes dated October 2012 found in Exhibit 15F which document an essentially normal examination and noted that claimant played sports with her children.

Tr. 19.

If a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96–2p; *see also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d at 590. The Commissioner typically accords greater weight to the opinion of a claimant's

---

[9] This appears to be a scrivener's error—Dr. Holtzclaw's first name is Priscilla. *See* Tr. 451.

treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ should consider "all of the following factors" to determine the weight to be accorded to the medical opinion: examining relationship; treatment relationship, including length of treatment relationship and frequency of examination, and nature and extent of treatment relationship; supportability; consistency with the record as a whole; specialization of the medical source; and other factors brought to the ALJ's attention to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

According to the policy interpretation of SSR 96–2p, even if a treating source's opinion is not entitled to controlling weight, the opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." SSR 96–2p ("When a Treating Source's Medical Opinion is not Entitled to Controlling Weight"). Additionally, SSR 96–2p provides that when the decision is a denial, it "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p ("Explanation of the Weight Given to a Treating Source's Medical Opinion").

The undersigned recommends a finding that the ALJ failed to evaluate Dr. Holtzclaw's opinion as required by 20 C.F.R. § 404.1527(c). The ALJ's decision does not reflect consideration of all factors that must be considered when weighing a medical opinion. The only acknowledgment of the examining and treatment relationship between Plaintiff and Dr. Holtzclaw is the ALJ's reference to Dr. Holtzclaw as "claimant's primary care provider." Tr. 18. However, the ALJ neglected to discuss the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, or specialization. Furthermore,

the ALJ's explanation summarily concluded Dr. Holtzclaw's opinion was inconsistent with a prior progress note from a routine follow-up exam. The only specific notation referenced by the ALJ was that Plaintiff "played sports with her children." Tr. 19. Again, as noted previously, this reference appears to be carried over from earlier documented progress notes regarding Plaintiff's social history. The ALJ did not properly assess Dr. Holtzclaw's opinion as required by 20 C.F.R. § 404.1527(c).[10]

4.  Step Four Analysis

Plaintiff's final argument is that the ALJ's conclusion that she could perform her past work as a realtor is not supported by substantial evidence. Pl.'s Br. 13-14. The Commissioner contends substantial evidence supports the ALJ's decision as he "compared Plaintiff's RFC with the requirements of her past work as a realtor and correctly determined that Plaintiff's RFC was fully compatible with the requirements of Plaintiff's past work as actually and generally performed." Def.'s Br. 13.

SSR 82–62 provides:

The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles,* etc., on the requirements of the work as generally performed in the economy.

---

[10] Also, as Plaintiff indicates, Pl.'s Br. 13, n.3, the ALJ failed to acknowledge or weigh the opinions of non-treating state agency medical consultants that noted some of the same limitations as Dr. Holtzclaw. *See* Dr. Jean Smolka RFC assessment, Ex. 1A, Tr. 42, and Dr. Isabella McCall RFC assessment, Ex. 4A, Tr. 55 (opining that Plaintiff could occasionally lift/carry 20 pounds and occasionally stoop and crouch).

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

SSR 82–62, 1982 WL 31386, at *3 (1982). A claimant bears the burden of demonstrating that her impairment prevents her from performing her PRW. *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995). If a claimant can perform PRW either as she performed it or as it is generally performed in the economy, the claimant is not disabled within the meaning of the Act. SSR 82–61, 1982 WL 31387, at *2 (1982). The Commissioner may employ the services of a VE at step four of the sequential evaluation process to help determine whether a claimant can perform her PRW. *See* 20 C.F.R. § 404.1560. The Commissioner may rely on the general job categories of the Dictionary of Occupational Titles ("DOT") as presumptively applicable to the claimant's prior work. *DeLoache v. Heckler,* 715 F.2d 148, 151 (4th Cir. 1983).

Here, the ALJ determined that in "comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform work as a realtor as it is actually and generally performed." Tr. 19. Nowhere in his decision does the ALJ reference a specific job number in the DOT, discuss the duties Plaintiff performed as a realtor, or describe what the physical or mental demands of the work entailed. At no point in the administrative hearing was Plaintiff asked about her past work neither did the ALJ enlist the services of a vocational expert to determine the demands of Plaintiff's past work. The undersigned is unable to determine whether the ALJ's decision that Plaintiff can perform her PRW is supported by substantial evidence.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the ALJ's decision is supported by substantial evidence or is without legal error.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

IT IS SO RECOMMENDED.

August 21, 2015                                             Kaymani D. West
Florence, South Carolina                                    United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**